IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| RICHARD SCHENCK, ) | |
| ) | |
| Plaintiff, ) | Case No. CV07-08-S-EJL |
| ) | |
| vs. ) | MEMORANDUM ORDER |
| ) | |
| MOTORCYCLE ACCESSORY ) | |
| WAREHOUSE, INC., and RICHARD SALMON, ) | |
| ) | |
| Defendants. ) | |

Plaintiff Richard Schenck filed this action in state court against Defendants Motorcycle Accessory Warehouse, Inc. ("MAW") and Robert Salmon alleging breach of an employment agreement. Subsequently, Defendants removed the action and invoked this Court's jurisdiction on diversity grounds under 28 U.S.C. § 1332. MAW then filed a Motion to Dismiss for Improper Venue pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure, or, in the alternative, for a change of venue pursuant to 28 U.S.C. § 1404(a). Defendant Salmon also filed a Motion to Dismiss, seeking dismissal for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. Plaintiff opposes both motions. The motions are now ripe. Having fully reviewed the record herein, the Court finds that the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, these motions shall be decided on the record before this Court without oral argument.

### Background

Plaintiff, MAW and Salmon, acting as CEO on behalf of MAW, entered into three contracts. The first agreement, dated June 18, 2001, set forth the initial terms of the parties' business arrangement. The second agreement outlined the terms for Plaintiff's participation in a stock bonus plan (the "Restricted Stock Bonus Agreement"). And the final contract, signed on November 11, 2002, modified the terms of the first agreement and provided for the continued employment of Plaintiff as MAW's President.

Following the execution of the third contract, MAW's principle place of business moved to Boise, Idaho, and Plaintiff performed his duties as President of MAW in Boise, Idaho. Plaintiff alleges that he was terminated without cause by Salmon on November 4, 2005.

Plaintiff filed the present action after demanding, but not receiving, deferred compensation, contractual severance, and/or a buy-out of Plaintiff's 5% minority stock interest in MAW. In response, MAW filed the Motion to Dismiss for Improper Venue and Salmon filed the Motion to Dismiss for Lack of Personal Jurisdiction.

### Discussion

**I. Motion to Dismiss for Improper Venue**

MAW moves to dismiss Plaintiff's complaint for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3).  Plaintiff bears the burden of showing that venue is properly laid in the instant forum. Piedmont Label Co. V. Sun Garden Packing Co., 598 F.2d 491, 496 (9th Cir. 1979).  There is a strong presumption in favor of the plaintiff's forum choice.  Ravelo Monegro v. Rosa, 211 F.3d 509, 513 (9th Cir. 2000).

In support of their respective positions, Plaintiff and MAW have each submitted affidavits.  Analysis of a Rule 12(b)(3) motion to dismiss for improper venue permits the district court to consider facts outside the pleadings. R.A. Argueta v. Banco Mexicano, S.A., 87 F.3d 320, 324 (9th Cir. 1996).  In the context of a Rule 12(b)(3) motion, disputed facts must be viewed in the light most favorable to the non-moving party. Murphy v. Schneider

Nat'l, Inc., 362 F.3d 1133, 1138 (9th Cir. 2004). The trial court must draw all reasonable inferences and resolve all factual disputes in favor of the non-moving party. Id.

### 1. Section 1391(a)

In civil actions wherein jurisdiction is found solely on diversity of citizenship, venue is governed by 28 U.S.C. § 1391(a). This statutory provision provides:

> [a] civil action wherein jurisdiction is founded only on diversity of citizenship may ... be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(a). The parties agree that the relevant provision at issue in this case concerns the application of § 1391(a)(2).

In order for venue to be proper within this district pursuant to § 1391(a)(2), a "substantial part" of the events giving rise to this suit must have occurred in Idaho. MAW asserts that a substantial part of the events in this case occurred in Colorado and therefore venue would be proper there. Specifically, MAW relies on the fact that all three agreements were executed in Colorado. However, the fact that substantial activities and events occurred in Colorado does not disqualify Idaho as a proper venue as long as substantial activities took place in Idaho as well. See 28 U.S.C. § 1391(a)(2). Indeed, the chosen venue need not be the best venue, but only a qualifying venue. Silver Valley Partners, LLC v. De Motte, 400 F. Supp. 2d 1262, 1269 (W.D. Wash. 2005). In other words, to satisfy the second prong of § 1391 it is not necessary for Plaintiff to show that a majority of events giving rise to the action occurred in Idaho, but only that a substantial part of the events took place here. See Pasulka v. Sykes, 131 F. Supp. 2d 988, 994 (N.D. Ill. 2001).

Substantial events include not only the location where negotiations and execution of a contract occurred but also the place where the contract was intended to be performed and the place where the alleged breach occurred. Gulf Ins. Co. V. Glassbrenner, 417 F.3d 353, 357 (2d Cir. 2005); see also Shropshire v. Fred Rappoport Co., 294 F. Supp. 2d 1085, 1094 (N.D. Cal. 2003). Plaintiff states that at the time the third agreement was signed the parties

contemplated that MAW's principle place of business would be moved to Boise, Idaho. Further, Plaintiff states that the business was moved to Idaho, that he performed his duties as President in Idaho, and that the alleged termination without cause and breach of the contracts occurred in Idaho. (Aff. of Richard Schenck ¶¶ 2-5).

This Court is required to draw all reasonable inferences and resolve all factual conflicts in favor of Plaintiff. Murphy, 362 F.3d at 1138. Construing all facts in the light most favorable to Plaintiff, this Court finds that a substantial part of the events giving rise to the dispute underpinning the Plaintiff's lawsuit did occur in Idaho.

### 2. Forum Selection Clause

MAW and Salmon also argue that dismissal is proper because the Restricted Stock Bonus Agreement contains a forum selection clause requiring that any litigation take place in Colorado. "[A] forum selection clause is presumptively valid." Jones v. GNC Franchising, Inc., 211 F.3d 495, 497 (9th Cir. 2000). "The party challenging the forum selection clause bears a 'heavy burden' of establishing the existence of a ground[] for rejecting its enforcement." Id. (citation omitted).

Plaintiff, however, notes that the forum selection clause is void and unenforceable pursuant to Idaho Code § 29-110, which has been interpreted by the Idaho Supreme Court as "expressing a strong public policy against the enforcement of foreign selection clauses."[1] Cerami-Kote, Inc. v. Energywave Corp., 773 P.2d 1143, 1146 (Idaho 1989). MAW, in turn, argues that § 29-110 applies only to franchise agreements. But this attempt to limit the scope of § 29-110 is not supported by the case law.

In Cerami-Kote, for instance, the Idaho Supreme Court stated that the "statute has been interpreted to render unenforceable a clause in a promissory note which provided for venue in a county other than that designated by the relevant venue statute." 773 P.2d at 1146.

---

[1] Federal law controls the resolution of a venue dispute based on a forum selection clause. Jones, 211 F.3d at 497. However, one factor a court must consider when determining the validity of a forum selection clause under federal law is the state's public policy. M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 15 (1972). This is true even where, as here, the contract at issue is an employment contract. See, e.g., Murphy v. Schneider National, Inc., 362 F.3d 1133, 1140 (9th Cir. 2004).

MEMORANDUM ORDER - Page 4
07ORDERS\SCHENCK_DISMISS.WPD

Section 29-110 also has been utilized to settle disputes involving insurance contracts. See, e.g. Sunshine Min. Co. v. Allendale Mut. Ins. Co., 684 P.2d 1002, 1003 (Idaho 1984); Industrial Indem. Ins. Co. v. United States, 757 F.2d 982, 987 (9th Cir. 1985) (explaining in a insurance contract dispute that § 29-110 "prohibits any condition in a contract that would . . . [permit] deviation from statutory standards"). And the statute has been applied to a dispute between shareholders of a corporation. Oneida v. Oneida, 503 P.2d 305, 306-07 fn.1 (Idaho 1972).

In sum, § 29-110 expresses a fundamental policy "against the enforcement of foreign selection clauses." Cerami-Kote, 773 P.2d at 1146. Because of that, § 29-110 bars enforcement of the forum selection clause in the Restricted Stock Bonus Agreement. Id.; Jones, 211 F.3d at 498.

**3. Transfer of Venue**

Finally, MAW contends that this litigation should be transferred to Colorado pursuant to 28 U.S.C. § 1404(a). Section 1404(a) allows transfer of a case from one federal district court to another "for the convenience of parties and witnesses in the interest of justice." The district court has discretion "to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." Jones, 211 F.3d at 498. In this regard, the court may weigh multiple factors relevant to the particular case, including: (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof. Id. at 498-99.

There is a strong presumption in favor of the plaintiff's choice of forum. Ravelo Monegro v. Rosa, 211 F.3d 509, 513 (9th Cir.2000). And the burden is on MAW to show that Colorado is "the more appropriate forum for the action." Jones, 211 F.3d at 499 & n.22. In other words, MAW "must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d

834, 843 (9th Cir.1986). Consideration of the factors listed above fails to convince the Court that MAW has carried its burden.

Although the contracts at issue were executed in Colorado, MAW's principle place of business was in Idaho and Plaintiff performed his job duties in Idaho. The events giving rise to this lawsuit, the termination of Plaintiff and Defendants' alleged failure to adequately compensate Plaintiff, are alleged to have occurred in Idaho. And Plaintiff is currently a resident of Idaho. Moreover, Idaho appears to supply the governing law as to the substantive issue of this action. All these factors favor Plaintiff's choice of forum.

In the Court's opinion, other factors, such as cost of litigation, availability of witnesses, and ease of access to sources of proof, favor neither Idaho nor Colorado. In sum, the Plaintiff's choice of the Idaho forum should prevail. See Jones, 211 F.3d at 499. MAW's Motion to Dismiss for Improper Venue, or, In The Alternative, For Change of Venue will be denied.

## II. Defendant Salmon's Motion to Dismiss

Defendant Salmon has filed a Motion to Dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. In support of their respective positions, Plaintiff and Salmon have each submitted affidavits. Motions to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(2) are speaking motions and it is appropriate to look beyond the pleadings to affidavits and other evidence when considering them. Data Disc, Inc. v. Sys. Tech. Assoc., Inc., 557 F.2d 1280, 1285 (9th Cir. 1977). When the motion is based on written materials rather than an evidentiary hearing, the "plaintiff need only make a prima facie showing of jurisdictional facts." Id. at 1285. In such cases, the Court only inquires whether the plaintiff's pleadings and affidavits make a prima facie showing of personal jurisdiction. Id. Where not directly controverted, a plaintiff's version of the facts is taken as true for the purposes of a 12(b)(2) motion to dismiss. Dole Food Co. V. Watts, 303 F.3d 1104, 1108 (9th Cir. 2002)

In this diversity case the Court's power to exercise personal jurisdiction over a non-resident defendant is limited both by the applicable state personal jurisdiction statute ("long arm statute") and the Due Process Clause. See Sher v. Johnson, 911 F.2d 1357, 1360 (9th Cir. 1990) (citing Data Disc, 557 F.2d at 1286)). However, as the Ninth Circuit has

MEMORANDUM ORDER - Page 6
07ORDERS\SCHENCK_DISMISS.WPD

previously recognized, the Idaho Legislature intended in adopting the long arm statute to exercise all of the jurisdiction available under the Due Process Clause. Lake v. Lake, 817 F.2d 1416, 1420 (9th Cir. 1987) (citing Doggett v. Electronics Corp. of Am., 454 P.2d 63, 67 (Idaho 1969)). Thus, the state and federal limits are co-extensive, and an independent review of whether jurisdiction exists under the long arm statute is unnecessary. Id.; Data Disc, 557 F.2d at 1286.

Due process requires that in order for a non-resident defendant to be haled into court the defendant must have certain minimum contacts with the forum state such that the traditional notions "'of fair play and substantial justice'" are not offended. See Sher, 911 F.2d at 1361 (quoting International Shoe Co. v. Washington, 326 U.S. 310, 320 (1945)). Additionally, "the defendant's 'conduct and connection with the forum State' must be such that the defendant 'should reasonably anticipate being haled into court there.'" Sher, 911 F.2d at 1361 (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)). The focus in a personal jurisdiction determination is primarily on "the relationship among the defendant, the forum, and the litigation." Shaffer v. Heitner, 433 U.S. 186, 204 (1977).

States may exercise general or specific jurisdiction over non-resident defendants. See Helicopteros Nacionales de Colombia S.A. v. Hall, 466 U.S. 408, 414 nn.8-9 (1984). General jurisdiction can be asserted when the defendant's activities in the forum state are "continuous and systematic" or "substantial." Perkins v. Benguet Consol. Mining Co., 342 U.S. 437, 445, 447 (1952).

When specific jurisdiction is asserted, the Ninth Circuit has used a three part test: (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable. Lake, 817 F.2d at 1421. The Ninth Circuit provides a number of factors to consider in determining the third factor of reasonableness in an effort to preserve the "traditional notions of fair play and substantial

justice." International Shoe, 326 U.S. at 316. These factors include: (1) the extent of defendant's involvement in affairs in the forum state, (2) the burden of the defendant to defend in the forum, (3) the extent of the conflict with the sovereignty of defendant's home state, (4) the forum's interest in adjudicating the dispute, (5) the most efficient judicial resolution of the dispute, (6) the importance of the forum in protecting plaintiff's interest in convenient and effective relief, and (7) the existence of an alternate forum. See Terracom v. Valley Nat'l Bank, 49 F.3d 555, 561 (9th Cir. 1995) (citing Core-Vent v. Nobel Indus. AB, 11 F.3d 1482, 1487-88 (9th Cir. 1993)).

The plaintiff bears the burden of satisfying the first two prongs of the test. Sher, 911 F.2d at 1361. If the plaintiff fails to satisfy either of these prongs, personal jurisdiction is not established in the forum state. If the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to the defendant to "present a compelling case" that the exercise of jurisdiction would not be reasonable. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476- 78 (1985).

Plaintiff does not argue that Salmon is subject to general jurisdiction and therefore Plaintiff must show that the exercise of specific jurisdiction over Salmon is proper. Under the first prong of the three-part specific jurisdiction test, Plaintiff must establish that Slamon "[has] performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state.'" Doe v. Unocal Corp., 248 F.3d 915, 923 (9th Cir. 2001).[2]

In this regard, Plaintiff states that Salmon controls MAW by holding a majority of its outstanding shares; that the three agreements between Plaintiff and MAW were signed by Salmon as the CEO of MAW; that at the time the parties entered into the final agreement it was anticipated that Salmon would transfer MAW's principle place of business to Idaho; that the business was transferred to Idaho; and that Salmon personally traveled to Idaho "when he terminated the Business Agreement without [allegedly] fulfilling the obligations owed to

---

[2] On the tort claim, the purposeful availment prong focuses on a purposeful direction analysis. See, e.g., Schwarzenegger v. Fred Martin Motor Company, 374 F.3d 797, 801, 802 (9th Cir. 2004). This is true when either intentional or negligent tort claims are alleged. See, e.g., Ziegler v. Indian River County, 64 F.3d 470, 473-74 (9th Cir.1995); Whalen v. National Occupational Health Strategies, LLC, 2006 WL 223741 (W.D. Wash. Jan 25, 2006). In this case, the result is the same under either a purposeful availment or purposeful direction analysis.

Plaintiff upon such termination." (Mem. in Opp'n at 10). These actions by Salmon, purposefully directed toward Idaho, easily satisfy the purposeful availment prong of the personal jurisdiction test. See e.g., Davis v. Metro Prods., Inc., 885 F.2d 515, 520-23 (9th Cir.1989) (finding personal jurisdiction over two defendants who each owned 50% of company's shares and who purposefully directed their activities toward the forum when the entity they controlled did business in the forum).

In response, Salmon argues that his contacts with Idaho as an officer of MAW cannot be attributed to him for the purpose of establishing personal jurisdiction on individual liability claims. This notion, sometimes called the "fiduciary shield doctrine," has been considered and rejected by the Ninth Circuit in the personal jurisdiction context. Davis, 885 F.2d at 520-23. If, as here, "the state's long-arm statute allows jurisdiction to the extent allowed by the Constitution, then employing the fiduciary shield to insulate employees is inconsistent with the wide reach of the statute." Brink v. First Credit Res., 57 F.Supp.2d 848, 859 (D.Ariz.1999) (citing Davis, 885 F.2d at 522). Moreover, this restriction on the fiduciary shield is not inconsistent with due process considerations. Davis, 885 F.2d at 520-23. The fiduciary shield doctrine, therefore, is not an impediment to establishing personal jurisdiction over Defendant Salmon. See id.

The second requirement of specific jurisdiction provides that the cause of action must be closely related to the defendant's actions in the forum state. In this regard, the Ninth Circuit has adopted a "but for" test. See, e.g., Gray, 913 F.2d at 761. Here, "but for" Salmon's actions in Idaho, Plaintiff would not have suffered his alleged contractual injuries. Therefore, this element is satisfied. See id.

As for the third and final consideration: "Once purposeful availment has been established, the forum's exercise of jurisdiction is *presumptively reasonable*. To rebut that presumption, a defendant 'must present a *compelling* case' that the exercise of jurisdiction would, in fact, be unreasonable." Roth v. Garcia Marquez, 942 F.2d 617, 625 (9th Cir.1991) (emphasis in original). Considering all seven factors, Salmon has failed to present a

compelling case that jurisdiction in Idaho is unreasonable.[3] Therefore the Motion to Dismiss for Lack of Personal Jurisdiction will be denied.

## ORDER

Based on the foregoing, and the Court being fully advised in the premises, it is **HEREBY ORDERED** that the Motion to Dismiss for Improper Venue, or In the Alternative, for Change of Venue (docket no. 4) and that the Motion to Dismiss for Lack of Personal Jurisdiction (docket no. 7) are **DENIED**.

DATED: **April 17, 2007**

Honorable Edward J. Lodge
U. S. District Judge

---

[3] Of course, the Plaintiff continues to hold the burden to establish the existence of personal jurisdiction throughout this action, including the full burden of proof by a preponderance of the evidence at trial. See, e.g. Lake, 817 F.2d at 1420 ("Presenting a prima facie case of jurisdiction, however, does not necessarily guarantee jurisdiction over the defendant at the time of trial.").